IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Number: 3:25CR100-RCY |
| | ) |
| REYNALDO DEL CID-CASTILLO, | ) |
| Defendant. | ) |
| | ) |
| | ) |

**DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**

Mr. Del Cid-Castillo's 2012 expedited order of removal is void and invalid, because the officer who entered it had no authority to do so. Both the Appointments Clause, U.S. CONST. ART. II, § 2, Cl. 2, and the applicable statute, 8 U.S.C. § 1103(a)(5), require officers who order the removal of aliens under the expedited removal statute to have been appointed by the Secretary of the Department of Homeland Security. Because the officer who ordered Mr. Del Cid-Castillo's removal in 2012 was not properly appointed, the order he issued is void.

**I.    Background**

According to discovery provided by the government, Mr. Del Cid-Castillo never saw an immigration judge. Instead he was arrested near the Treaty of Guadalupe-Hidalgo line, in Texas, and subjected to an expedited removal under 8 U.S.C. § 1225 and 8 C.F.R. § 235.3.

**A.    Framework for Expedited Removals**

The expedited removal statute is terse:

> If an immigration officer determines that an alien . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review[.]

1

8 U.S.C. § 1225(b)(1)(A)(i).[1] The referenced sections – 8 U.S.C. § 1182(a)(6)(C) and (a)(7) – relate generally to entry without inspection or without property entry documents. "Immigration officer" is defined tautologically as

> any employee or class of employees of the Service or of the United States designated by the Attorney General, individually or by regulation, to perform the functions of an immigration officer specified by this chapter or any section of this title.

8 U.S.C. § 1101(a)(18).[2] More specifically, Congress has vested the Secretary of the Department of Homeland Security with

> the power and duty to control and guard the boundaries and borders of the United States against the illegal entry of aliens and shall, in his discretion, appoint for that purpose such number of employees of the Service as to him shall appear necessary and proper.

8 U.S.C. § 1103(a)(5).

The scope of applicability of expedited removals to people who have not been admitted or paroled, in addition to arriving aliens, has to be asserted by the Secretary of DHS, and can extend temporally to up to 2 years after entry.[3]

The regulations provide a further set of procedures, as shown in the flowchart, below:

---

[1] The omissions cover situations not applicable to Mr. Del Cid-Castillo's case, such as aliens arriving from countries without full diplomatic relations, or who apply for asylum.
[2] "Attorney General" should be read to include the Secretary of Homeland Security since the transfer of most immigration functions with creation of DHS in 2003. *See* 8 U.S.C. § 1103 (transferring functions); 6 U.S.C. § 557 (rule of construction to read Attorney General to refer to Secretary of DHS where applicable).
[3] At the time of Mr. Del Cid-Castillo's removal order, the limits were 100 air miles of the border and where the alien has not established to the satisfaction of the immigration officer 14 days of continuous physical presence. Notice *Designating Aliens for Expedited Removal*, 69 FR 48877 (Aug. 11, 2004).



### B. Mr. Del Cid-Castillo's Removal in 2012

According to discovery, Mr. Del Cid-Castillo was encountered on September 19, 2012 near Donna, Texas by a Border Patrol Agent. He was 19 years old. He was questioned, and provided his true name, admitted that he was not a citizen and had no documents to permit his entry, and had crossed the Rio Grande. Exhibit A (I-213 Record of Deportable Alien). Fingerprint and records checks confirmed that Mr. Del Cid-Castillo had no prior immigration or criminal arrests.

The next day, Border Patrol Agent Antelmo Castillo interviewed Mr. Del Cid-Castillo. He provided an advisal, in Spanish, of the right to apply for asylum, which Mr. Del Cid signed. He

completed a background interview in Spanish, and recorded the answers in English on Form I-867A and B, which Mr. Del Cid Castillo initialed and signed. Exhibit B (Form I-867A & B).

The Agent then entered an order of removal, finding that Mr. Del Cid was removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I), in that he was an immigrant not in possession of an unexpired entry document. A supervisor, Raul Rodriguez, Acting Field Operations Supervisor, also signed the order. Exhibit C (Orders of removal). Two copies of the order of removal appear in discovery, both with the same date, but with slightly different signatures. A verification of removal indicates that Mr. Del Cid-Castillo was removed on an ICE Air flight on October 16, 2012.

## II. The Indictment Should be Dismissed Under 8 U.S.C. § 1326(d)

### A. Exhaustion and Judicial Review

Section 1326(d)(1) requires the noncitizen to show that he exhausted any administrative remedies that may have been available to seek relief against the order. That's easy here because, by statute, there is no administrative review available by law. 8 U.S.C. § 1225(b)(1)(A)(i) (providing for entry of order "without further hearing or review").

Likewise, for purposes of § 1326(d)(2), there was no prior opportunity for judicial review, because Congress has stripped courts of jurisdiction to review expedited removal orders. *See* 8 U.S.C. § 1252(a)(2)(A) (forbidding judicial review of application of § 1225(b)(1) to individuals, or to the "procedures and policies adopted by the Attorney General to implement" the expedited removal statute). There is habeas review available, but it is limited to whether the petitioner is an alien, whether the person was ordered removed under the expedited removal statute, and whether the petition was a lawful permanent resident or had been granted asylum. 8 U.S.C. § 1252(e). This exclusive list does not include challenges to the appointment of immigration officers, the basis of this motion, which is expressly forbidden by § 1252(a)(2)(A)(iv). In addition, the

expedited removal statute itself forbids courts from reviewing expedited removal orders even in the context of a § 1326 prosecution. 8 U.S.C. § 1225(b)(1)(D).

These jurisdiction-stripping provisions, however, do not prevent *this* Court from reviewing the order in the context of Mr. Del Cid-Castillo's prosecution under 8 U.S.C. § 1326. In *United States v. Villarreal Silva*, 931 F.3d 330 (4th Cir. 2019), the Fourth Circuit acknowledged the jurisdiction-stripping provision of § 1225(b)(1)(D), and held it unconstitutional:

> We conclude that when an expedited removal is alleged to be an element in a criminal prosecution, the defendant in that prosecution must, as a matter of due process, be able to challenge the element — i.e., to contend that the removal was invalid — if he did not have a prior opportunity to do so. Because the rules attendant to expedited removal preclude review of the removal order, the defendant in a § 1326 prosecution premised on an expedited removal order under § 1225(b)(1)(A)(i) must be given the opportunity in the § 1326 prosecution to challenge the validity of that order.

*Id.* 335. Therefore Mr. Del Cid passes through the threshold tests of § 1326(d)(1) and (2), and the Court should review his removal order's validity on the merits. It must dismiss the indictment if the entry of his removal order was fundamentally unfair.

### B. Fundamentally Unfair

#### 1. The Order is Void Under the Appointments Clause

The Appointments Clause gives the President the power to

> appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. CONST. ART. II, § 2, Cl. 2.

This provision sets out two classes of "officers" of the United States. *See Kennedy v. Braidwood Management, Inc.*, 145 S.Ct. 2427, 2442 (2025). Principal officers must be appointed by the President and confirmed by the Senate. But the appointment of inferior officers can be

5

vested in Cabinet level officers without Senatorial consent. *See United States v. Germaine*, 99 U.S. 509, 509-510 (1879). Anyone who "can be said to hold an office under the government" is "intended to be included within one or the other of these modes of appointment[.]" *Id*. Below officers are simple employees, and the "Appointments Clause cares not a whit about who named them." *Lucia v. S.E.C.*, 585 U.S. 237 (2018).

Mr. Del Cid does not argue that immigration officers are principal officers, which generally includes cabinet-level positions and those officials who may exercise power "free from control by a superior" – at least other than the President. *Kennedy*, 145 S.Ct. at 2443 (citations omitted). The first question, therefore, is whether "immigration officers" acting under 8 U.S.C. § 1225(b)(1) to order the removal of individuals from the United States are inferior officers, who must be at least appointed by the head of an agency (here, the Secretary of Department of Homeland Security), or instead are mere employees.

> a)  *Immigration Officers With the Authority to Enter Orders of Removal Are Inferior Officers Under the Appointments Clause*

As the Court held in *Lucia*, there are two criteria "for distinguishing between officers and employees." 585 U.S. at 245. First, the duties of the officer must be "continuing and permanent" or "continuing position established by law" rather than "occasional or temporary." *Id*. (quotations omitted). Second, the official must "exercise[] significant authority pursuant to the laws of the United States." *Id*. (quotations omitted). "No class or type of officer is excluded because of its special functions." *Buckley v. Valeo*, 424 U.S. 1, 132 (1976) (per curiam).

Immigration officers, including the Border Patrol Agent and AFOS who signed Mr. Del Cid's removal order, occupy a continuing and permanent position established by law. Their duties and authority with respect to expedited removals are set out explicitly in an Act of Congress, 8

U.S.C. § 1225(b)(1); 8 U.S.C. § 1101(a)(15). They occupy, it goes without saying, a "continuing position established by law."

They also "exercise significant authority pursuant to the laws of the United States." As in *Lucia*, it isn't necessary to "elaborate on [the] 'significant authority' test" because another precedent "makes that project unnecessary." 585 U.S. at 245. The Supreme Court has previously held that "near carbon copies" of immigration officers are inferior officers of the United States. *Id*. at 246.

In *Nishimura Ekiu v. United States*, 142 U.S. 651 (1892), the Supreme Court held that an "inspector of immigration" was an inferior officer of the United States under the Appointments Clause. *Id*. at 664. There, a statute directed such officers to "go on board any vessel bringing alien immigrants, and to inspect and examine them" and that they "shall have power to administer oaths, and to take and consider testimony touching the right of any such aliens to enter the United States[.]" *Id*. at 662. It also provided that the immigration inspector's decision "touching the right of any alien to land" "shall be final" subject to review by the Secretary of Treasury. There, the immigration inspector *was* appointed by the Secretary; the petitioner challenged that procedure, and argued the immigration inspector should have been appointed under the statute by a lower official. The Supreme Court rejected that argument, holding

> But the constitution does not allow congress to vest the appointment of inferior officers elsewhere than 'in the president alone, in the courts of law, or in the heads of departments.' The act of 1891 manifestly contemplates and intends that the inspectors of immigration shall be appointed by the secretary of the treasury; and appointments of such officers by the superintendent of immigration could be upheld only by presuming them to be made with the concurrence or approval of the secretary of the treasury, his official head.

*Id*. at 663. As discussed below, the duties of immigration inspectors is functionally the same as that of immigration officers under 8 U.S.C. § 1225. Like in *Ekiu*, immigration officers during the

7

expedited removal process go far beyond the duties of ordinary law enforcement officers to investigate; instead the adjudicate as well and issue binding orders that affect determine inadmissibility, administer oaths, take testimony, make discretionary decisions on relief, *see* 8 U.S.C. § 1225(a)(4); and their decisions are even more "final" than in *Ekiu*, because they are insulated even from administrative or judicial review. *Supra* § II.A.

The analogy goes even deeper.  Here, like the act of 1891, 8 U.S.C. § 1103(a)(3) "manifestly contemplates and intends that the [immigration officers] shall be appointed by the secretary" of the Department of Homeland Security.  8 U.S.C. § 1103(a)(5) (Secretary may "in his discretion, appoint" officers to guard border).

Even if *Ekiu* did not resolve the status of immigration officers under 8 U.S.C. § 1225(b), a survey of other positions the Supreme Court has held constitute inferior officers make clear they would qualify as wielding "significant authority." Other historical examples of inferior officers with delegated "statutory duties" included "tidewaiters (individuals who watched goods land at a customhouse)," *Lucia*, 585 U.S. at 254–55 (Thomas, J., concurring), and "a postmaster first class." *Buckley*, 424 U.S. at 126; *see also Myers v. United States*, 272 U.S. 52, 163–64 (1926). More recently, there are election supervisors, *Buckley*, 424 U.S. at 126, and *any* commissioned military officer, *Weiss v. United States*, 510 U.S. 163, 170 (1994).

>    2.    *Neither Border Patrol Agent Castillo Nor AFOS Rodriguez Was Appointed by the Secretary of Homeland Security*

Mr. Del Cid's removal order was entered by Border Patrol Agent Castillo, and approved by Acting Field Office Supervisor Rodriguez.  Neither was appointed by the Secretary of the Department of Homeland Security.  *See* Comm. on Oversight & Gov't. Reform, U.S. House of Representatives, 112th Congress, 2d Session (Dec. 1, 2012) (the "Plumbook") (listing all federal

8

government positions subject to noncompetitive appointments, not listing Border Patrol Agent or Acting (or actual) Field Office Supervisor)[4]

### 3. The error is structural

A violation of the Appointments Clause is a serious and fundamental constitutional defect. "The manipulation of official appointments had long been one of the American revolutionary generation's greatest grievances against executive power." *Freytag v. Comm'r*, 501 U.S. 868, 883 (1991) (quotations, citations omitted). The "Framers understood . . . that by limiting the appointment power, they could ensure that those who wielded it were accountable to political force and the will of the people." *Id*. at 884. Because of the central role of the Appointments Clause in preserving the constitutional structure of government, the Supreme Court has strictly enforced its observance through "remedies with bite." *Cody v. Kijakazi*, 48 F.4th 956, 960 (9th Cir. 2022). "The Appointments Clause is 'more than a matter of 'etiquette or protocol''—it is 'among the significant structural safeguards of the constitutional scheme.'" *Kennedy v. Braidwood Mgmt., Inc.*, 145 S. Ct. 2427, 2442 (2025) (citations omitted).

Generally, prejudice requires a showing that there is a reasonable probability of a different outcome without the error. However, there is a class of errors – structural errors – that do not require a showing of actual prejudice. They include errors that affect the "framework" within which a proceeding is conducted. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006). The Fourth Circuit has specifically and recently recognized that per se prejudice can apply to defective immigration proceedings. *See Quintero v. Garland*, 998 F.3d 612, 642 (4th Cir. 2021).

---

[4] https://www.govinfo.gov/content/pkg/GPO-PLUMBOOK-2012/pdf/GPO-PLUMBOOK-2012.pdf

Because of its fundamental nature, Appointments Clause violations are structural errors. The Supreme Court does not inquire into hypotheticals or harmless error - the remedy for an Appointments Clause violation "is a new hearing before a properly appointed official." *Lucia*, 138 S. Ct. at 2055 (quotations, citations omitted). Similarly, the D.C. Circuit has twice explained that an Appointments Clause violation is structural. It thus requires vacating an order—no matter whether there is any "clear causal link to a party's harm." *S.W. General, Inc. v. NLRB*, 796 F.3d 67, 79 (D.C. Cir. 2015). The Fourth Circuit has, following *Cody*, held that vacatur of the improperly issued order without regard to actual prejudice is the appropriate remedy for an Appointments Clause violation. *See Brooks v. Kijakazi*, 60 F.4th 735, 742 (4th Cir. 2023). Relatedly, the Supreme Court has specifically rejected an argument by the government to apply a version of the good faith exception to Appointments Clause violations. *See Ryder v. United States*, 515 U.S. 177, 185-86 (1995) (reversing conviction from military court improperly convened in violation of Appointments Clause).

Because Mr. Del Cid's removal order was entered in disregard of a fundamental structural Constitutional principle, it is void, and cannot be used to fulfil an element of the indictment pending against him. The indictment should therefore be dismissed.

Respectfully Submitted,
Reynaldo Del Cid-Castillo.

By:     /s/
Counsel
Joseph S. Camden
Va. Bar No. 92143
Assistant Federal Public Defender
Office of the Federal Public Defender
701 E. Broad St., Ste. 3600
Richmond, VA 23219
(804) 565-0830
Fax (804) 648-5033
joseph_camden@fd.org