IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:25-cr-100 |
| REYNALDO DEL CID-CASTILLO, | |
| *Defendant*. | |

## RESPONSE TO DEFENDANT'S MOTION TO DISMISS

The defendant asks this Court to do the extraordinary—to be the *first* and *only* court in the entire country to invalidate a duly issued expedited removal order (issued in accordance with the relevant statutory framework) pursuant to a novel argument—that United States Customs and Border Patrol agents (hereinafter "BPAs") do not have the legal authority to issue expedited removal orders. *See* Def. Mot. to Dismiss Indictment ("MTD"), ECF No. 21. The defendant, however, has failed to establish a violation of 8 U.S.C. § 1326(d), and accordingly his motion must be denied. In particular, he has failed to show that the expedited removal that he challenges was "fundamentally unfair," because 1) BPAs are non-officer employers, not "inferior officers" under the Appointments Clause, and accordingly there is no due process violation; and 2) the defendant has failed to meet his burden to show the requisite actual prejudice causally linked to the purported due process violation.

### I.    Background

The defendant is a citizen of El Salvador and was removed from the United States in October 2012 after the U.S. Department of Homeland Security ("DHS") determined that he was inadmissible and placed him into expedited removal proceedings.

1

On September 20, 2012, BPA Antelmo Castillo ("BPA Castillo") of the United States Border Patrol ("USBP") took the defendant's sworn statement after other agents found the defendant near Donna, Texas and arrested him for illegal entry into the United States. MTD, Ex. 2 (ECF No. 21-2), Rec. of Sworn Stmt (September 20, 2012).

BPA Antelmo Castillo communicated with the defendant in Spanish and reviewed the content of the "Record of Sworn Statement in Proceedings under Section 235(b)(1) of the [Immigration and Nationality Act] (INA)" with him. *Id.* at 1. This form included an explanation of rights and an advisement that the defendant "d[id] not appear to be admissible or to have the required legal papers authorizing [his] admission to the United States" and that "this may result in [him] being denied admission and immediately returned to [his] home country without a hearing." *Id.* In his statement to BPA Castillo, the defendant admitted to being a citizen of El Salvador and said he had entered the United States by crossing the Rio Grande. *Id.* at 2. He denied any fear or concern about returning to El Salvador and said he had entered the United States "to work and live." *Id.* at 2–4. After confirming that he had no questions nor anything to add, the defendant signed his sworn statement, including an acknowledgment that it had been read to him, as did the other witness agent. *Id.* at 4.

As is common in such cases of such apprehensions close to the border with admissions, DHS determined the same day that the defendant was subject to expedited removal from the United States under Section 235(b)(1) of the INA (8 U.S.C. § 1225(b)(1)) as one who lacked any valid entry document and was therefore inadmissible to the United States under Section 212(a)(7). MTD, Exh. 3 (ECF No. 21-3), Not. & Or. of Expedited Removal (Sept. 20, 2012) – Form I-860. BPA Castillo completed and signed the order of removal. *Id.* A supervisor, Acting Field Operations Supervisor Raul Rodriguez, reviewed and approved the order. *Id.* DHS provided the defendant

with a notice that he was not admissible. ECF No. 21-4, "Not. to Alien Ordered Removed/Departure Verification" (Sept. 20, 2012). Lee than a month later, on or about October 16, the defendant was removed from the United States to El Salvador via a chartered deportation flight from San Antonio, Texas. *Id.* Prior to removal, the defendant was served an I-296, Notice to Alien Ordered Removed form.

After this removal, the defendant illegally returned to the United States and came to the attention of U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations ("ICE ERO") officials following his arrest by police officers in Henrico County, Virginia for the offense of Domestic Assault and Battery–Family Member, in violation of Va. Code § 18.2-57.2, in connection with a December 29, 2023, incident. Henrico Cnty. J&DR Case # JA103003-01-00. He received a deferred disposition in that case on March 25, 2024, and has a dispositional hearing scheduled in that matter for March 27, 2026. *Id.* On June 17, 2025, a grand jury indicted the defendant on one count of Reentry of Removed Alien, in violation of 8 U.S.C. § 1326(a). ECF No. 3, Indictment.

On October 31, 2025, the defendant filed the current motion to dismiss under 8 U.S.C. § 1326(d), collaterally attacking his 2012 expedited removal order as invalid and asking this Court to dismiss the indictment. The defendant's claim fails.

**II.    The Defendant Has Failed to Show that His Expedited Removal Violated the Appointments Clause, Nor Has He Shown Prejudice.**

The crime of illegal reentry occurs when an "alien" reenters the United States after having been denied admission, excluded, deported, removed, or having departed from the United States while under an order of exclusion, deportation, or removal, without first receiving express authorization to reenter. 8 U.S.C. § 1326(a).

8 U.S.C. § 1326(d) allows defendants charged with violations of Section 1326 to collaterally attack their deportation orders in certain narrow circumstances. A defendant may only collaterally attack the underlying removal order by showing:

(1) he has exhausted his administrative remedies to challenge that order;

(2) the removal proceedings improperly deprived him of an opportunity for judicial review; and

(3) entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

Section 1326(d) was "intended to ensure that minimum due process was followed in the original deportation proceeding while preventing wholesale, time consuming attacks on underlying deportation orders." 140 Cong. Rec. S5558-01, S5571 (daily ed. May 11, 1994); *see also United States v. Sanchez-Peralta*, 1998 WL 63405 at *2 (S.D.N.Y. 1998) (analyzing the 1996 amendments to § 1326). Because the three requirements of § 1326(d) are stated in the conjunctive, they are mandatory, and a defendant must satisfy all three in order to prevail in a collateral attack. *United States v. Palomar-Santiago*, 593 U.S. 321, 326 (2021) (reversing Ninth Circuit ruling excusing defendant from satisfying the first two elements because defendant was removed for an offense that did not render him removable); *United States v. Cortez*, 930 F.3d 350, 356 (4th Cir. 2019) ("Under 8 U.S.C. § 1326(d), a noncitizen must make each of three showings to come within that exception and mount a collateral attack."); *United States v. Ortiz*, 488 F. App'x. 717, 717–18 (4th Cir. 2012); *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005).

The burden of proof to establish that the elements of Section 1326(d) have been satisfied "rests with the defendant". . . [and] "the defendant must meet his burden under § 1326(d) by a preponderance of the evidence." *United States v. Galcia*, No. 1:15-cr-59, 2016 WL 4054926, at *2

(E.D. Va. July 26, 2016). The government need only show that the defendant failed to establish one of the § 1326(d) requirements to defeat a collateral attack on the removal order. Even if a defendant could satisfy (d)(1) or (2), if he cannot satisfy § 1326(d)(3), he would still not be entitled to relief. *See United States v. Moreno-Tapia*, 848 F.3d 162, 171 (4th Cir. 2017) (declining to reach § 1326(d)(2) where defendant could not satisfy § 1326(d)(3)); *United States v. Wilson*, 316 F.3d 506, 511 n.3 (4th Cir. 2003) (same).

### a. The Defendant Fails to Meet Prong Three Because He Has Failed to Show the Removal Order was Fundamentally Unfair[1]

A defendant who seeks to challenge the validity of his deportation order must demonstrate that "the entry of the [2012 removal] order was fundamentally unfair." 8 U.S.C. § 1326(d)(3). In order to establish fundamental unfairness, a defendant must show that (1) his due process rights were violated by defects in his underlying removal proceeding, and (2) he suffered prejudice as a result of the defects. *El Shami*, 434 F.3d at 664. It is the defendant's burden to show there is a reasonable likelihood the result of the removal proceeding would have been different had the error he now complains of been remedied. *Id.* at 665.

The defendant raises a single challenge to his expedited removal order, and that argument falls well short of showing that the expedited removal order was "fundamentally unfair" under § 1326(d), a standard that not only requires a due process violation, but also prejudice. The defendant cannot meet these requirements, so his motion fails.

The defendant argues that the BPA who executed the defendant's expedited removal was an "inferior officer" under the Appointments Clause of the Constitution, U.S. CONST. art. II, § 2,

---

1 As the defendant cannot prevail on one of the sub-requirements, the government need not address each requirement under Section 1326(d).

cl. 2, such that he needed to be appointed under the Clause's procedures. MTD at 5–9. This argument fails on the merits because the agent was a "non-officer employee," not an "inferior officer" subject to the Appointments Clause. Further, the defendant has failed to show actual prejudice. The selection of a differently appointed agent would not have impacted the decision to remove the defendant, and he cannot show he would not have been subject to expedited removal. Indeed, this Court can deny the defendant's motion on this lack-of-prejudice basis alone, without addressing whether the agent here was an "inferior officer" or "non-officer employee."

> i. *The Defendant has Failed to Show that the Appointments Clause was Violated.*

The defendant invites this Court to be the first in the country to find that all BPAs, like the one involved here, who execute expedited removals, are "inferior officers," subject to the Appointments Clause. This finding would require these agents to be appointed by the President, the courts, or a head of department. The Court should decline this invitation.

The Appointments Clause provides:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. CONST. art. II, § 2, cl. 2. The Appointments Clause distinguishes between "principal" and "inferior" officers, and its requirements do not apply to employees who are not "officers." *See Freytag v. Commissioner*, 501 U.S. 868, 880-81 (1991) (*citing Buckley v. Valeo*, 424 U.S. 1, 126 & n.162 (1976)); *see Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 506 n.9 (2010) (recognizing that "dramatically" more than "nine-tenths of the persons rendering service to the government" are non-officer employees or agents). "The Appointments Clause prescribes the

exclusive means of appointing 'Officers.' Only the President, a court of law, or a head of department can do so." *Lucia v. S.E.C.*, 585 U.S. 237, 244 (2018). "Non-officer employees," who are "part of the broad swath of 'lesser functionaries' in the Government's workforce," do not implicate the Appointments Clause. *Id.* at 245.

In distinguishing between "officers" and "non-officer employees," the Supreme Court has held that to be an "Officer of the United States" covered by Article II, a person must "exercis[e] significant authority pursuant to the laws of the United States." *Buckley*, 424 U.S. at 125–26 (holding that Federal Election Commission members were "officers," in part, because of their administrative functions, including rulemaking decisions, rendering advisory opinions, and making determinations of eligibility for funds and even for federal elective office itself).

In arguing that the agent involved here was an "officer" under the Appointments Clause, the defendant relies on *Lucia*, which held that U.S. Securities and Exchange Commission administrative law judges (ALJs) are "officers" under *Buckley*'s significant-authority test. MTD at 6–8. However, *Lucia* and the Supreme Court's other Appointments Clause cases cannot be read to cover the far more limited authority of BPAs like the agents involved here, whose authority is exercised in an informal, non-adjudicative setting and whose discretion is constrained under the immigration law and regulations, even when making final removal decisions.

An alien present in the United States who was inadmissible when he entered is deportable. 8 U.S.C. § 1227(a)(1)(A) & (B). An alien, such as the defendant, is inadmissible where he lacks a valid unexpired entry document such as a visa, reentry permit, or border crossing identification card. 8 U.S.C. § 1182(a)(7)(i)(I). In the screening process for the "inspection of applicants for admission," an agent must determine whether a noncitizen is inadmissible under one of the statutory grounds for an expedited removal, and if so, the agent "*shall* order the alien removed

7

from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(2)(i) (emphasis added).[2] Generally, this is the central focus of the agent's findings in an expedited removal, and an agent's discretionary decision not to proceed with expedited removal proceedings is further informed by regulations and other information. *See* 8 U.S.C. § 1225(a)(4) ("An alien applying for admission may, in the discretion of the [Secretary] and at any time, be permitted to withdraw the application for admission and depart immediately from the United States."); 8 C.F.R. § 235.4 ("Permission to withdraw an application for admission should not normally be granted unless the alien intends and is able to depart the United States immediately."). As summarized earlier, this limited and largely ministerial decision occurred during the defendant's underlying expedited removal.

By comparison, the SEC ALJ "officers" involved in *Lucia* had "nearly all the tools of federal trial judges." *Lucia*, 585 U.S. at 248. *Lucia* involved formal adversarial proceedings, which included the ALJs' authority to "take testimony," "conduct trials," "rule on the admissibility of evidence," and "have the power to enforce compliance with discovery orders." *Id*. This is a far cry from the authority and discretion of the BPA involved here who executed the expedited removal. In issuing expedited removal orders, such agents do not take testimony, conduct trials, or rule on

---

2 In making this determination, the agent must: (1) "create a record of the facts and statements made by the alien"; (2) "advise the alien of the charges against him or her on Form I-860, Notice and Order of Expedited Removal"; and (3) "the alien shall be given an opportunity to respond to those charges in the sworn statement." 8 C.F.R. § 235.3(b)(2)(i). "After obtaining supervisory concurrence . . . the alien shall sign the reverse" of the Form I-860 to acknowledge receipt. 8 C.F.R. § 235.3(b)(2)(i). Unless the noncitizen indicates an intention to apply for asylum, expresses a fear of persecution or torture or of return to his or her country of origin, or claims to be a U.S. citizen or a returning lawful permanent resident of the United States, asylee, or refugee, or claims to have been admitted or paroled into the United States, an expedited removal order is not subject to further administrative review. See 8 U.S.C. § 1225(b)(1)(A)(i), (C); 8 C.F.R. § 235.3(b)(2)–(7).

the admissibility of evidence; nor do they, in issuing expedited removal orders, "shape the administrative record" by issuing subpoenas, enforcing discovery orders, or making contempt findings; they do not "administer oaths, rule on motions," or regulate hearings or the conduct of parties and counsel. Nor do they exercise "significant discretion." *See Lucia*, 585 U.S. at 247–48; *Freytag*, 501 U.S. at 873 (holding that special trial judges for the U.S. Tax Court were constitutional "officers" because they had been authorized by statute to exercise distinctively sovereign power, to shape formal adversarial proceedings instituted to impose as much as $1.5 billion of civil liability on private individuals). Immigration agents' "discretion is highly constrained" and "subject to consultation requirements, to guidelines, and to supervision," limiting their authority and making it "insufficient to rank them as inferior Officers." *Tucker v. Comm'r*, 676 F.3d 1129, 1134–35 (D.C. Cir. 2012) (holding that appeals officers within the IRS do not exercise "significant authority" given their "lack of discretion" which rendered their duties, while important, "ministerial"). These differences in scope and discretion between BPAs and special trial judges and ALJs are critical.

While the defendant offers no real comparison to special trial judges and ALJs, he discusses at length steamship-boarding immigration inspectors of old. *See* MTD at 7–8. In his view, deciding officers resemble inspectors, and thus a Supreme Court case addressing inspectors is especially relevant. *See id.* (citing *Ekiu v. United States*, 142 U.S. 651, 663 (1892)). Yet it is no surprise that, in the century-plus since *Ekiu* issued, no court has invoked it as Appointments Clause precedent. Neither party cited the Clause, let alone litigated a claim under it. Instead, the appellant argued that an inspector who ordered her removal should have been appointed by a lower-level official (the superintendent of immigration) *instead of* the department head (the treasury secretary). *See Ekiu*, 142 U.S. at 662–63.

This Court should not be the first to constitutionalize that nearly 135-year-old *dicta*. Nothing about it has persuasive force. It predates the cases outlining the "basic framework for distinguishing between officers and employees." *Lucia*, 585 U.S. at 245. And it offers no precursor framework of its own. In fact, it offers no rationale at all; the discussion of inferior officers is limited to the lone sentence just quoted. So there is simply no reasoning to apply here.

Yet even if the Court were inclined to build constitutional doctrine on *Ekiu*'s passing line, that would not help Del Cid-Castillo. Even squinting, one sees few parallels between BPAs and 19th-century immigration inspectors. Unlike BPAs—and even IJs—inspectors acted as both prosecutor and judge. They could not only issue "decisions . . . touching the right of any alien to land," but also "detain" and "inspect all such aliens" before making those decisions. Act of Mar. 3, 1891, ch. 551, § 8, 26 Stat. 1084. That detain-and-inspect power included removing aliens from ships for a "thorough inspection," ordering a medical exam, administering oaths, and taking and considering testimony "which shall be entered of record." *Id.* The Act also contained a catch-all provision giving inspectors "[a]ll duties imposed and powers conferred" by earlier law "upon state commissioners, boards, or officers" contracting with the secretary to perform immigration functions. *Id.*

In exercising those powers, inspectors were not limited to clearcut cases involving aliens lacking a valid unexpired entry document who do not indicate either an intention to apply for asylum or a fear of persecution. They adjudicated "the right of any alien to land," which involved deciding whether they were "idiots, insane persons, paupers," "persons likely to become a public charge, persons suffering from a loathsome or a dangerous contagious disease, persons who have been convicted of a felony or other infamous crime or misdemeanor involving moral turpitude, polygamists, and" persons who did not pay their own way to America unless a "special inquiry"

showed that they would not fall within one of the above categories. *Id.* §§ 1, 8. Those inquires, like special trial judge or ALJ inquiries, often involved fact issues and credibility decisions. *Ekiu* itself proves the point. In it, an alien claimed she was not removable as a likely public charge since she came to live with her husband, but the claim was deemed false. *See Ekiu*, 142 U.S. at 656. Today, of course, that fact-bound claim in a complicated public-charge case would fall to an immigration judge, not a BPA. *See* 8 U.S.C. §§ 1182(a)(4), 1227(a)(5). So while inspectors may resemble immigration judges in many respects, they are not comparable to BPAs. The Court should thus hold that, if anything, *Ekiu* confirms that no Appointments Clause violation occurred here.

In sum, neither *Lucia* nor the Supreme Court's other Appointments Clause cases support the defendant's argument to extend the appointment requirements to this new proposed class of federal officer. Indeed, the logic of the defendant's position would extend the Appointments Clause well beyond these decisions and implicate many traditional law enforcement functions (such as arrests), and other discretionary, final decisions, that the Appointments Clause has never been found to cover.

Because the BPA here was a "non-officer employee," and not an "inferior officer," he did not need to be appointed by the President, the courts, or a head of department, and therefore the defendant cannot show a violation of the Appointments Clause.

### ii.  *The Defendant had Failed to Show the Required Prejudice.*

The defendant's claim also fails because he cannot establish actual prejudice from the alleged error. He would have been removed whether a differently appointed agent was responsible for determining his ineligibility for admission and administering the expedited removal order. This Court can deny the defendant's motion on this basis alone, without addressing whether the agent here was an "inferior officer" or "non-officer employee" under *Lucia*.

Even in *Lucia*, the Supreme Court decided that the petitioner was entitled only to a "new hearing," not a judgment in his favor on the merits. *Lucia*, 585 U.S. at 252; *cf. Cody v. Kijakazi*, 48 F.4th 956, 963 (9th Cir. 2022) (holding that new hearing before a new ALJ was sufficient remedy for Appointments Clause violation). Even in *Lucia*, the Supreme Court clarified that "we do not hold that a new officer is required for *every* Appointments Clause violation." 585 U.S. at 252 n. 5 (emphasis added).

As an initial matter, the defendant invites this Court to create a novel rule where prejudice is presumed for Appointments Clause violations (MTD at 9-10), notwithstanding that section 1326(d) requires "fundamental unfairness," which in turn requires a showing of prejudice.

In order to advance this argument, the defendant relies on the Fourth Circuit's holding in *Quintero v. Garland*, 998 F.3d 612 (4th Cir. 2021), which the defendant argues demonstrates that the "Fourth Circuit has specifically and recently recognized that per se prejudice can apply to defective immigration proceedings." MTD, ECF No. 21 at 9. The defendant neglects to mention that *Quintero* is not a § 1326(d) prosecution and does not evaluate a defendant's heavy burden (and whether he may be excused) under § 1326(d)(3) for a showing of actual prejudice, rather *Quintero* is an appeal of a final removal order for the Board of Immigration Appeals. Importantly, the Fourth Circuit's holding in *Quintero* to presume prejudice was predicated on the underlying error being the immigration judge's failure to develop the record, which results in "limit[ing] our ability to meaningfully review and determine as a matter of law whether that error was 'likely to impact the results' as to Petitioner's application for withholding of removal." 998 F.3d at 643. This holding is clear that the Fourth Circuit did not excuse the burden of showing actual prejudice because of an alleged structural error (as defendant suggests), rather it had no record upon which to conduct a prejudice determination, and as such was left with no option but to assume prejudice.

The same is not true of Mr. Del Cid-Castillo where the record conclusively demonstrates that he was inadmissible and removable at the time of his immigration arrest as he was an alien present without valid entry documents.

The Court should decline the defendant's invitation to presume prejudice because it would require disregarding both the Supreme Court's instruction that "each of the statutory requirements of § 1326(d) is mandatory," *Palomar-Santiago*, 593 U.S. at 329, and controlling Fourth Circuit authority. To establish fundamental unfairness under § 1326(d)(3), the defendant "must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *El Shami*, 434 F.3d at 664. To establish prejudice, the defendant "must show that, but for the [due process] errors complained of, there was a reasonable probability that he would not have been deported." *Id*. at 665.

In various contexts, even in cases involving serious allegations of error during removals and the administrative process, the Fourth Circuit has uniformly required a showing of prejudice under section 1326(d). For example, in *United State v. Lopez-Collazo*, the Fourth Circuit held that even where the defendant suffered a due process violation because immigration officers failed to explain the removal charges, his right to contest the charges, or his right to legal representation in his native language, the defendant failed to satisfy the prejudice prong because he failed to demonstrate a reasonable probability that he would not have been deported because the defendant was statutorily ineligible for voluntary removal due to aggravated felony. 824 F.3d 453, 462–65 (4th Cir. 2016). The Fourth Circuit further explained in *Lopez-Collazo* that there must be a causal link between the alleged defect in the removal proceeding and the resulting prejudice. 824 F.3d at 466. The defendant simply cannot do that here, nor has he attempted to do so.

As recently as 2025, the Fourth Circuit has not departed from this standard in interpreting section 1326(d). The law is clear: prejudice is required, and a defendant's failure to show prejudice is fatal to his collateral challenge to a removal order. *See, e.g.*, *United States v. Castro-Aleman*, 141 F.4th 576, 581–582 (4th Cir. 2025) (holding that because Castro-Aleman was removable for three separate reasons, including that he was in the country without going through proper immigration inspection, he was unable to show a "reasonable probability that he would not have been deported" and thus failed to satisfy the requirement that a proceeding was "fundamentally unfair" under § 1326(d)(3)); *see also United States v. Terrazas-Silas*, 811 F. App'x 845, 847 (4th Cir. 2020) (affirming denial of motion to dismiss under § 1326(d) because of Terrazas-Silas's failure to demonstrate that she suffered actual prejudice because "Terrazas-Silas failed to demonstrate a reasonable probability that a formal request to withdraw her application for admission would have been granted by the immigration officer.")

Further, other courts facing similar Appointments Clause challenges in the immigration context have similarly rejected the contention that defendants are not required to demonstrate prejudice in a 1326(d) challenge. For example, in *United Staes v. Sanchez-Chavez*, the defendant had been previously removed following his conviction for an aggravated felony and in a subsequent illegal reentry criminal case attempted to collaterally attack his prior removal order by arguing that the immigration "officer who entered the removal order was not appointed in accordance with the Appointments Clause, so the removal order was unlawful." No. 5:22-CR-40042-TC, 2023 WL 2045355, at *1 (D. Kan. Feb. 16, 2023). In denying the defendant's motion, the *Sanchez-Chavez* court focused its analysis on the defendant's failure to "claim[] []or present[] evidence that he would have avoided removal if he had been tried before an official appointed in

accordance with the Appointments Clause." *Id.* at \*4. The court rejected Sanchez-Chaves's argument that prejudice should be presumed:

> The Tenth Circuit addressed a similar argument in *United States v. Rangel de Aguilar*, 308 F.3d 1134 (10th Cir. 2002), in which the defendant claimed her deportation hearing was unfair because it was not held before a neutral magistrate, *id.* at 1136. But even though the defendant raised constitutional objections to the removal process, the Tenth Circuit refused to presume she had been prejudiced, determining instead that she presented insufficient evidence that the claimed procedural defect would have changed the outcome. *See id.* at 1138–39. Prejudice was not presumed there, nor will it be here. And absent that presumption, Sanchez-Chavez has no evidence or argument that he has been prejudiced by the claimed error. He has not shown the entry of the 2013 removal order was fundamentally unfair or would have been substantively different depending on the selection or confirmation of the decisionmaker.

*Id.*

Thus, the defendant is required to show actual prejudice and has not even attempted to do so here. In expedited removal proceedings, in which a noncitizen has not indicated he intends to apply for asylum; has not expressed fear of persecution, torture, or return; or has not claimed U.S. citizenship status as a returning lawful permanent resident, asylee, or refugee, the noncitizen's only possible relief from removal is withdrawal of the application for admission to the United States. *See* 8 U.S.C. § 1225(a)(4); 8 C.F.R. § 235.4. A noncitizen does not have a right to withdraw the application for admission; instead, the grant of such relief is discretionary. 8 C.F.R. § 235.4 ("The alien's decision to withdraw his or her application must be made voluntarily, but nothing in this section shall be construed to give an alien the right to withdraw his or her application for admission."); *see also United States v. Villarreal Silva*, 931 F.3d 330, 339 (4th Cir. 2019) ("because Villarreal did not sufficiently demonstrate *a reasonable probability* that the Attorney General would have allowed him to withdraw his application for admission under § 1225(a)(4), he failed to show prejudice, as required to demonstrate that his removal was fundamentally unfair.").

First, the defendant has not shown that he would have requested withdrawal of his application but for any alleged error in the appointment of the agent who administered the expedited removal. Therefore, he cannot show that he would have avoided expedited removal if there was a differently appointed agent. Indeed, he does not dispute that the expedited removal complied with all other procedural requirements. Nor does he present any evidence to support an argument that he would have requested to withdraw his application for admission.

Second, even assuming that the defendant can show that he would have requested to withdraw his application for admission, he cannot show prejudice, because he has not made a plausible showing that this discretion would have been exercised in his favor.

When examining whether a defendant has plausible grounds for relief from removal, BPAs may examine the totality of facts and circumstances in a particular individual's case when exercising their discretion. When reviewing these matters, for removals that occurred in the same time period as the defendant's, courts within the Eastern District of Virginia have, in-part, consulted the Inspector's Field Manual. *See United States v. Sanchez-Lopez*, 414 F. Supp. 3d 842, 847 (E.D. Va. 2019); *United States v. Villarreal Silva*, 313 F. Supp. 3d 660, 678-79 (E.D. Va. 2018), *aff'd,* 931 F.3d 330 (4th Cir. 2019); *see also* MTD at 3.

The Field Manual provides six factors that can help guide an officer's decision whether to grant discretionary relief:

> (1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations.

*United States v. Villarreal Silva*, 313 F. Supp. 3d at 678 (citing Field Manual § 17.2(a)).

The defendant has not made this showing. The defendant has not established that based on all of the facts the equities of his case would have prompted an agent to grant a discretionary

withdrawal at the time of the 2012 expedited removal. Even under the above factors, only the second factor—previous findings of inadmissibility—can be fairly described as favorable to the defendant because at that time he had not yet been removed from the United States. The other factors in the manual support a finding that any discretionary relief was implausible. In short, the totality of facts undermine the defendant's claim.

The first and third factors in the Field Manual—the seriousness of the immigration violation and the defendant's intent to violate the law—both weigh against the defendant. The expedited removal occurred after the defendant illegally crossed into the United States by wading across the Rio Grande River. MTD, Ex. 2 at 2 (ECF No. 21-2), Rec. of Sworn Stmt. (September 20, 2012). The Field Manual does not define a "serious immigration violation," but it does address the manner of a noncitizen's entry and suggests an immigration violation is not serious where an "alien may have innocently or through ignorance, misinformation, or bad advice obtained an inappropriate visa" or presented entry documents that are "prima facie valid." Inspector Field Manual § 17.2(a). Although the defendant did not present fraudulent documents, he was caught trying to enter the United States surreptitiously through crossing a river. This type of crossing makes his immigration violation serious and shows his intent to violate the law. *See, e.g., United States v. HaroMunoz*, 552 F. App'x 689, 690 (9th Cir. 2014) (affirming the denial of a section 1326(d) motion and finding a "serious" immigration violation where the defendant "was caught entering the United States by stealth, not innocently through ignorance, misinformation, or bad advice").

The fourth factor in the Field Manual—the ability to easily overcome the ground of inadmissibility—also weighs against the defendant, as he had been found inadmissible because he

lacked valid entry documents required to enter. He has put forth no evidence showing that he could have overcome this ground of inadmissibility.

The Field Manual's fifth and sixth factors—the age or poor health of the noncitizen, and other humanitarian or public interest considerations—weigh against the defendant. In 2012, the defendant was not a juvenile – he was 19 years old – and as he concedes, he did not present with health or other humanitarian conditions, such as making a claim of fear or having the purpose of reuniting with family. Ex. 2 (ECF No. 21-2), Rec. of Sworn Stmt. (September 20, 2012). Indeed, his stated purpose for leaving El Salvador was to "work." *Id.* Purely economic considerations have not received the same solicitude as rejoining a family, because "most immigrants who enter our country without inspection" do so out of a "desire to secure and enjoy a higher standard of living." *United States v. Rivas-Gonzalez*, 384 F.3d 1034, 1044 (9th Cir. 2004); *United States v. Braxton*, 175 F. App'x 380, 382 (2d Cir. 2006) (collecting cases evaluating cultural assimilation in the sentencing context to the motivation to commit the underlying crime, in some cases, illegal re-entry). Thus, the defendant's evidence falls short of showing significant humanitarian considerations warranting plausible relief.

The defendant cannot meet his burden to establish prejudice under the totality of circumstances. Ultimately, he not only fails to show an Appointments Clause violation, but he has failed to show that the outcome of the expedited removal would have been different had a differently selected or appointed agent carried out the removal.

> iii. *The Few Courts that Have Addressed this Appointments Clause Argument Have Squarely Rejected It.*

What the defendant asks this Court to do is truly remarkable—be the first and only court in the entire country to find that such expedited removal orders are violations of the Appointments Clause. While the defendant's theory is certainly novel, a handful of inventive defense attorneys

have attempted to persuade other district courts under the same theory, and in each instance the courts have squarely rejected this argument.

In *United States v. Millanes-Corrales*, relying on *Lucia*, the defendant made that exact same argument that Del Cid-Castillo makes now—"Defendant contended his 'expedited removal proceedings were fundamentally unfair' because 'the immigration officials conducting ... expedited removal[s] were inferior officers not properly appointed by the President, Courts of Law, or Heads of Departments[.]'" No. CR-22-02109-001-TUC-SHR (EJM), 2024 WL 2503030, at *3 (D. Ariz. May 24, 2024). In *Millanes-Corrales*, the Magistrate Judge issued a Report & Recommendation expressly rejecting this argument, that was later upheld by the District Judge. The Magistrate Judge concluded that:

> Border Patrol agents who conduct expedited removals of noncitizens are not inferior officers under the Appointments Clause. A Border Patrol agent's authority and duties in conducting an expedited removal are not remotely akin to a judge or other decision-maker. The agents do not conduct any independent investigation, take evidence, and have little discretion. As a result, expedited removal proceedings do not resemble a trial or evidentiary hearing where witness testimony and evidence is presented to determine whether expedited removal is the lawful and/or appropriate remedy. Therefore, the Court recommends that the Motion to Dismiss be denied based on an Appointments Clause violation.

*United States v. Millanes-Corrales*, No. CR 22-02109-TUC-SHR (EJM), 2024 WL 2892446, at *1 (D. Ariz. Jan. 23, 2024), *report and recommendation adopted*, No. CR-22-02109-001-TUC-SHR (EJM), 2024 WL 2503030 (D. Ariz. May 24, 2024). Although the Magistrate Judge rejected the defendant's Appointments Clause argument, it erroneously recommended dismissal of the indictment on other grounds.

Both the defendant and the government filed objections to the R&R. As it related to the Appointments Clause challenge, the defendant raised three issues with the Magistrate Judge's recommendation: 1) that immigration officers who conduct expedited removal proceedings, as opposed to all BPAs, require appointment, 2) the Magistrate Judge failed to address the full scope

of BPAs' conduct in expedited removal proceedings; and 3) the Magistrate Judge misinterpreted *Lucia*. *Id.* at *3-4. The District Judge rejected all three of these objections to the Magistrate Judge's R&R. First, the District Judge emphasized the fact that the Magistrate Judge addressed the BPAs' "lack of significant discretion and layers of supervision" and agreed with the Magistrate Judge that BPAs conducting expedited removals are "lesser functionaries" unlike ALJs. *Id.* at *3. Second, the District Judge found that "even the evidence Defendant points to in the Objection shows Border Patrol agents involved in expedited removals merely 'take[ ] the noncitizen's statements' and process paperwork. (Doc. 75 at 2.) This conduct does not rise to the level of 'significant authority pursuant to the laws of the United States.'" *Id.* at *4 (quoting *Buckley*, 424 U.S. at 126). Finally, the District Judge found the Magistrate Judge's use of the *Lucia* framework as a guide was proper. *Id.*

In *United States v. Avalos*, the defendant also made a similar argument that was squarely rejected by the district court, albeit in slightly different circumstances dealing with a removal under 8 U.S.C. § 1228 for removal of aliens convicted of committing aggravated felonies. Avalos argued that deciding service officers conducting administrative removal proceedings are "inferior officers" that "wield substantial authority" in "removal proceedings" and thus should have been appointed by the "President, Courts of Law, or Heads of Departments." 3:23-cr-00828, Motion to Dismiss the Information Under § 1326(d), ECF No. 30 at 2, 9–16 (Aug. 4, 2023) (S.D. Cal.). Also relying on the *Lucia* factors, defendant Avalos argued that the Appointments Clause was violated because 1) deciding service officers have permanent employment with DHS, they have continuing, permanent jobs; 2) immigration officers receive evidence and shape the administrative record in removal proceedings; and 3) "Deciding service officers autonomously regulate the course of administrative removal proceedings." Although the district court did not write an opinion in

*Avalos*, the district court flatly rejected these arguments during an oral hearing: "It seemed to me that the government is correct that the issuing service officer is not analogous to an inferior officer, the duties are more ministerial and less akin to an immigration judge." Tr. 2:23–3:1, ECF No. 57 (Jan. 2, 2024).

Finally, as discussed *supra*, in *Sanchez-Chavez*, the defendant's circumstances were similar to Avalos – following a conviction for possession of a controlled substance with intent to distribute, the defendant was issued a Notice of Intent to Issue a Final Administrative Removal Order due to his conviction for an aggravated felony. 2023 WL 2045355, at *1. A Final Administrative Removal Order was entered to remove Sanchez-Chavez to Mexico, and after he was removed, he was again found in the United States. *Id*. Sanchez-Chavez attempted to collaterally attack the 2013 removal order under § 1326(d), arguing that the officer who entered the removal order was not appointed in accordance with the Appointments Clause. *Id*. The Sanchez-Chavez court declined to address the claimed procedural error under the Appointments Clause and instead concluded that he failed to satisfy the prejudice prong due to the lack of argument or even evidence that he would have avoided removal had he "been tried before an official appointed in accordance with the Appointments Clause." *Id*. at *4.

While these decisions are not binding on the Court, their rationale is certainly persuasive— that defendant's argument fails on multiple fronts as the ministerial functions of BPAs and immigration officers is not akin to a judge or other similar decision-maker who wield significant discretionary power, and even if it was, a defendant still must demonstrate actual prejudice, which the defendant has failed to do.

\*      \*      \*

For the foregoing reasons, the Court should deny the defendant's motion to dismiss.

Respectfully submitted,

Lindsey Halligan
United States Attorney

By    /s/ _____

Carla Jordan-Detamore
Virginia Bar No. 85934
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
919 East Main Street, Suite 1900
Richmond, Virginia 23219
(804) 819-7426
Carla.Jordan-Detamore@usdoj.gov