**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Number: 3:25CR100 |
| | ) |
| REYNALDO DEL CID-CASTILLO, | ) |
| Defendant. | ) |
| | ) |
| | ) |

## REPLY RE: MOTION TO DISMISS

In his motion to dismiss, Mr. Del Cid argued that his 2012 expedited removal order was void and invalid because the officer who entered the order was operating as an inferior officer of the United States and had not been appointed pursuant to the Appointments Clause of the Constitution. ECF No. 21.

The government's response narrows the issues. The government does not contend that either of the officers who issued or approved Mr. Del Cid's removal order were appointed by the President, Attorney General or Secretary of DHS. It does not argue that exhaustion under § 1326(d)(1) bars the motion, nor that there was any judicial review available under § 1326(d)(2). *See United States v. Villareal Silva*, 931 F.3d 330 (4th Cir. 2019) (acknowledging jurisdiction-stripping provisions applicable to expedited removal, holding unconstitutional when applied to collateral attack in criminal prosecution).

The government makes two discrete arguments in response. First, it argues that immigration officers conducting expedited removal proceedings are not officers under the Appointments Clause at all, but non-officer employees. ECF No. 34 at 5-11. Second, it argues

1

that a defendant alleging an Appointments Clause violation must show actual prejudice. ECF No. 34 at 11-18. Both arguments are wrong.

### A.     Immigration Officers Conducting Expedited Removal Proceedings Are Officers Under the Appointments Clause

The government first tries to lead this Court down a dangerous path, arguing that a Supreme Court case characterizing immigration inspectors with the power to inspect entrants and order removal, as officers under the Appointments Clause*, see Ekiu v. United States*, 142 U.S. 651, 663 (1892) lacks "persuasive force." ECF No. 34 at 10. Supreme Court cases, no matter their age, do not need persuasive force to be binding. The Appointments Clause holding was necessary and central and therefore binding. But even if it was, as the government claims, dictum, ECF No. 34 at 10, it's still binding. This court "cannot ignore the Supreme Court's explicit guidance simply by labeling it 'dicta.'" *United States v. Lane*, 689 F. Supp. 3d 232 (E.D.Va. 2023) (quoting *Hengle v. Treppa*, 19 F.4th 324, 346 (4th Cir. 2021). The Court should leave it to the Supreme Court to overrule its precedents.[1]

#### 1.     Ekiu *is Binding Precedent*

*Ekiu*'s holding that immigration inspectors are inferior officers under the Appointments Clause was "necessary to th[e] result," *see Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996), and a controlling "explication[] of the governing rules of law," *see Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (simplified).

---

[1] Bosse v. Oklahoma

2

It is worth being very clear about *Ekiu*. The case concerned the legality of an "inspector of immigration[']s]" removal order. 142 U.S. at 662. The inspector, Mr. Hatch, had ordered Ms. Ekiu removed from the United States for being likely to become a public charge. *Id*. at 661–62. The Court first held that it would not "re-examine" how the inspector found facts. *Id.* at 660. As a result, it explained, "The case must therefore turn on the validity and effect of the action of Hatch as inspector of immigration." *Id.* at 662.

The Supreme Court understood Ms. Ekiu to "argue[] that the appointment of Hatch was illegal." *Id.* at 663. It "was argued" the appointment was illegal "because it was made by the secretary of the treasury, and should have been made" by another official who was not a head of a department, the "superintendent of immigration." *Id.* at 663.

The Supreme Court rejected that argument on two grounds. First, under the Appointments Clause. It explained, "the constitution does not allow congress to vest the appointment of inferior officers elsewhere than 'in the president alone, in the courts of law, or in the heads of departments.'" *Id.* It explained that the non-cabinet-level officer's appointments "could be upheld only by presuming them to be made with the concurrence or approval of the secretary of the treasury, his official head." *Id.* It cited specifically to the Appointments Clause, "Const. art. 2, § 2," and three Appointments Clause cases. *Id.*[2] Second, it rejected the argument on statutory

---

[2]   In its attempt to get the Court to ignore binding Supreme Court precedent, the government claims that following *Ekiu* in this case would be to "constitutionalize" it holding. But as noted, *Ekiu* literally cites the United States Constitution, and the Appointments Clause specifically, along with three prior Appointments Clause cases, in the opinion. *Id*.

3

grounds: "The Act of 1891 manifestly contemplates and intends that the inspectors of immigration shall be appointed by the secretary of the treasury." *Id.*

*Both* of these grounds were necessary to "[t]he result"—that "the inspector of immigration was duly appointed." *Id.* at 664. The Court did not indicate one was more important than the other. Rather, the Court "expressly relied" on both "to reach [its] conclusion." *See Andrew v. White*, 145 S. Ct. 75, 82 (2025). When it comes to holdings, the question is whether "the court undeniably decided the issue, not that it was unavoidable for it to do so." *United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001) (en banc) (Kozinski, J., concurring). Because *Ekiu*'s Appointments Clause conclusions were undeniably decided and necessary to the result, they were holdings, not dicta.

Second, the holding in *Ekiu* directly controls here, because immigration officers conducting modern expedited removal proceedings are functionally the same as immigration inspectors. The government's attempts to distinguish the two don't hold up to any kind of scrutiny. The government asserts that BPAs, unlike immigration inspectors, don't "act[] as both prosecutor and judge," that they apparently can't "detain" or "inspect" alien applicants for admission, and can't "administer[] oaths." ECF No. 34 at 10. None of those assertions are the case, Border Patrol Agents can do all of those things. Here is a chart:

| Power | Immigration Officers | Immigration Inspectors |
|---|---|---|
| Detain | Yes<br>8 C.F.R. § 235.3(b)(2)(iii) | Yes<br>Act of Mar. 3, 1891, ch. 551, § 8, 26 Stat. 1084. |
| Administer Oaths | Yes<br>8 C.F.R. § 235.3(b)(2)(i) | Yes<br>Act of Mar. 3, 1891, ch. 551, § 8, 26 Stat. 1084. |
| Determine Admissibility | Yes<br>8 C.F.R. § 235.3(b)(2) | Yes<br>Act of Mar. 3, 1891, ch. 551, § 8, 26 Stat. 1084. |
| Grant Relief | Yes<br>8 C.F.R. § 235.4. | |

| Enter Final Unappealable Orders | Yes<br>8 C.F.R. § 235.3(b)(2)(ii). | No – entitled to administrative appeal<br>26 Stat. 1084, 1085, Ch. 551 § 8. |
|---|---|---|
| Keep a record of proceedings | Yes<br>8 C.F.R. § 235.3(b)(2) | Yes<br>Act of Mar. 3, 1891, ch. 551, § 8, 26 Stat. 1084. |

In fact, expedited removals aren't just limited to aliens who arrive at a place other than a port of entry – they can be adjudicated and entered at the Port of Entry itself, including land ports of entry, airports and ships. 8 C.F.R. § 235.3. The government notes, in its description of the expedited removal process, and in arguing that immigration officers exercise ministerial duties, that the relevant statute says officers "shall order the alien removed" if he or she is determined inadmissible and does not apply for asylum or express fear of persecution. 8 U.S.C. § 1225(b)(1)(A)(i); ECF No. 34 at 7-8. But it later concedes that immigration officers are authorized to exercise their discretion to grant relief in the form of withdrawal. Id. (citing 8 U.S.C. § 1225(a)(4) and 8 C.F.R. § 235.4). And it turns out the immigration inspectors operated under a similarly mandatory statute. 26 Stat. 1084, 1086, Ch. 551 § 10 ("[A]ll aliens who may unlawfully come to the United States shall, if practicable, be immediately sent back on the vessel by which they were brought in.").

The government also argues that immigration inspectors had to determine issues that required factual findings and involved credibility. ECF No. 34 at 10-11. But that's no distinction, because the same is true of immigration officers under the expedited removal statute. That is, officers have to make a determination that an alien is an "arriving alien," or falls within the jurisdictional geographic and time limits for expedited removals, which involves whether the alien has established physical presence at the relevant to "to the satisfaction of the immigration officer." 8 C.F.R. § 235.3(b)(i), (ii). Then the officer has to determine whether the alien is inadmissible

5

under 8 U.S.C. § 1182(a)(6)(C) or (a)(7). That, in turn, requires fact- and intent-specific findings, such as whether the person has "willfully mirepresent[ed] a material fact" to secure any immigration benefits; whether the person is an immigrant or non-immigrant, whether the person's entry documents are valid, 8 U.S.C. § 1182(a)(7)(A)(i); whether any waivers are available; *id*. at (a)(7)(A)(ii); (a)(7)(B)(ii), (iv). That some cases are easy to decide does not make the job of an immigration officer conducting expedited removal proceedings less "fact-bound" or "complicated" than that of immigration inspectors. ECF No. 34 at 11.

### 2. Deciding Officers Are Not Mere Employees

The above comparison of immigration officers and immigration inspectors under *Ekiu* shows the case cannot be distinguished; but it also show that, even if the Court were to treat the issue as a novel one, immigration officers are inferior officers under the Appointments Clause, not non-officer employees. That is, their job is not simply ministerial as the government claims.

Most importantly, immigration officers have a power that even immigration inspectors didn't have – they can not only adjudicate rights against individuals that have years of legal effect, *see* 8 U.S.C. § 1182(a)(9)(A)(i) (5-year period of inadmissibility after expedited removal; 20-year period for second or subsequent); but their orders are final and unreviewable.

Even without significant procedural powers, employees who make final decisions in "minor matters" are inferior officers. *Lucia*, 501 U.S. at 878. For example, in *Freytag*, the Supreme Court adopted two alternative bases to find that special tax judges were inferior officers. It first emphasized the tax judges' procedural powers. *Id.* at 880–82. But, it explained, "[e]ven if the duties of special trial judges . . . were not as significant as we . . . have found them to be, our conclusion would be unchanged." *Id.* at 882. "That was because the Government had conceded that in minor matters, where [the tax judges] could enter final decisions, they had enough

'independent authority' to count as officers." *Lucia*, 585 U.S. at 247 n.4 (discussing *Freytag*, 501 U.S. at 878). In other words, finality is not necessary, but it can be sufficient.

Finality is so important that, when officers make final decisions on major matters, they become *principal* officers. The Supreme Court recently held as much in *Arthrex*. There, the Court found that patent judges are principal officers because "the buck stops with" them. *Arthrex*, 594 U.S. at 17. The Court emphasized that it is "'significant'" to the Appointments Clause analysis that officers "have the 'power to render a final decision on behalf of the United States.'" *Id.* at 14 (quoting *Edmond v. United States*, 520 U.S. 651, 665 (1997)). Immigration officers' authority to enter unreviewable final orders on behalf of the United States is just as final.

Finally, the government's fear that the logic of this argument extends to "traditional law enforcement functions (such as arrests)" ECF No. 34 at 11, is unfounded. Ordinary law enforcement activities are step one of a multi-step process; officers can arrest, with probable cause, but they can't *detain* people while their cases are pending and without judicial oversight. Fed. R. Crim P. 5 (production before judge "without unnecessary delay" after arrest). They can charge, in a limited sense, but can't issue arrest warrants. Fed. R. Crim. P. 3, 4. Unlike immigration officers, they don't adjudicate anyone's rights with any finality, and none of their decisions are insulated through jurisdiction-stripping provisions from administrative or judicial review.

Combined with, as described above, the significant powers to detain, collect evidence, administer oaths, make factual and legal determinations, exercise discretion to consider relief, and issue final unreviewable orders determining and affecting individual rights, immigration officers conducting expedited removal proceedings are well within every definition of inferior officers of the United States.

### B. The Entry of the Order is Prejudice

Everyone agrees there has to be prejudice. But the government argues that the prejudice has to come from a counterfactual hypothetical in which the Court imagines how things might have gone absent the constitutional violation, like it does with non-structural procedural defects such as lack of notice or lack of translation. That's never been the rule for Appointments Clause violations and the Court should not apply that standard here. Instead, prejudice is shown by the nature of the violation, because an Appointments Clause violation is structural error.

In over a hundred years of Appointments Clauses cases, the government cannot produce even one example where an order entered by an official lacking the required appointment was enforced despite its invalidity or subjected to an actual prejudice requirement. The government's insistence on an actual-prejudice requirement, in the form of a counterfactual "what if" hypothetical misunderstands the nature of an Appointments Clause violation and the nature of judicial review in the context of a § 1326 prosecution.

The Fifth Amendment requires more than a watered-down version of judicial review before the removal order can be used for prosecution. For removal orders other than expedited removals, Congress has provided for judicial review. *See* 8 U.S.C. § 1252. Consistent with *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), this judicial review satisfies the Fifth Amendment rights of aliens later prosecuted under the removal order. And in order to prevail on a collateral attack, the alien must show that he was deprived of the judicial review that makes his removal order available for prosecution under § 1326. *Id*. But for expedited removals, where Congress has explicitly abolished any judicial review, a collateral attack under § 1326 is the first available opportunity to challenge the order. The Court must, at that point, under the Fifth Amendment, provide the judicial review that was previously unavailable. *Id*. at 838 ("an alternative means of obtaining judicial

review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense.").

Therefore cases concerning remedies and outcomes from the direct-review context are, contrary to the government's position, directly applicable to a collateral attack under § 1326(d) and the Fifth Amendment. It is therefore irrelevant that, for example, *Quintero v. Garland*, 998 F.3d 612 (4th Cir. 2021) was a direct immigration petition instead of a § 1326(d) collateral attack. ECF No. 34 at 12.

The government asserts that *Palomar-Santiago*, 593 U.S. at 329, requires a showing of actual prejudice. ECF No. 34 at 13. But *Palomar-Santiago* concerned exhaustion, and all that the *Palomar-Santiago* said was that the requirements of § 1326(d) are mandatory. Section 1326(d) does not mention prejudice. The government elides this.

The cases applying the actual prejudice analysis all concern non-jurisdictional procedural defects in removal proceedings, such as lack of notice, *United States v. El Shami*, 434 F.3d 659 (4th Cir. 2005). or lack of translation, *see United States v. Lopez-Collazo*, 824 F.3d at 453, 462-65 (4th Cir. 2016). The government has not produced a single case from this Circuit or even a published case from any other circuit refusing to apply a structural error analysis to a claim that enjoys structural-error treatment such as Appointments Clause violations.

The government isn't entirely clear on what the prejudice inquiry it asserts should apply even looks like. It's easy enough for procedural defects to imagine how the proceedings would have gone if the procedural defect hadn't occurred – that is, if Mr. El Shami had been provided proper notice, or Mr. Lopez-Collazo had been given a proper translation of the proceedings. But what's the counter-factual for an Appointments Clause violation? Should the Court imagine whether the President would have appointed, and the Senate confirmed, a particular officer, and

9

then imagine what that officer might have done?  Or should the Court imagine who a prior Secretary of the Department of Homeland Security would have appointed under 8 U.S.C. § 1103(a)(5) and what that official might have done?  If so, which Secretary of Homeland Security?  Should the Court ask itself what Tom Ridge, or James Loy, or Michael Chertoff, or Janet Napolitano would have done?

As even trying to perform the exercise shows, the government's position would require the Court to answer questions that are fundamentally political, not legal.  The government's proposed prejudice inquiry for Appointment Clause violations, in other words, suffers from a "lack of judicially discoverable and manageable standards for resolving" the question. *Nixon v. United States*, 506 U.S. 224 (1993).  The whole point of the Appointments Clause is to give Congress a role in deciding *who* gets to exercise the power of the United States.  *See* Freytag v. Comm'r, 501 U.S. 868, 884 (1991) (Appointments Clause meant to "sure that those who wielded [executive power] were accountable to political forces and the will of the people").  The government's current and recent practice indicates that it agrees that the identity of decisionmakers is a central part of the exercise of executive authority.  For example, it has fired or accepted resignations of 125 immigration judges (out of 700) despite a backlog requiring the introduction of military lawyers to serve as temporary judges,[3] and fired all of the previous administration's appointments to the

---

[3] Ximena Bustillo, *DOJ hires immigration judges after months of layoffs*, NPR (Oct. 24, 2025) (https://www.npr.org/2025/10/24/g-s1-95027/doj-hires-immigration-judges)

Board of Immigration Appeals.[4] It likely has the authority to do so, but illustrates dramatically that the identity of the person exercising authority under the immigration laws matters very much.

That principle is reflected in the cases the government cites. The government appears to concede that the proper remedy for an Appointments Clause violation is a "new hearing." It notes that the new hearing need not necessarily be before a "new officer." ECF No. 34 at 12. But the Lucia Court held that the *default* remedy for an Appointments Clause violation is a new hearing before a new officer, even where the original deciding officer has in the interim "received . . . a constitutional appointment." *Lucia*, 585 U.S. at 251.

### C. The administrative removal cases are distinguishable, and *Milanes-Corrales* magistrate opinion is demonstrably wrong.

The government spends pages discussing three non-binding cases: a magistrate judge report and recommendation in *United States v. Millanes-Corrales*, No. CR 22-02109-TUC-SHR (EJM), 2024 WL 2892446, at *1 (D. Ariz. Jan. 23, 2024); a transcript of an oral argument in a district court case from *United States v. Avalos*, 23-cr-00828 (Aug. 4, 2023) (S.D. Cal.), and a district court opinion from the District of Kansas, *United States v. Sanchez-Chavez*, 2023 WL 2045355 (D. Kan. 2023). ECF No. 34 at 18-21.

In reviewing those cases, though, first the Court should keep in mind that out-of-circuit and district court opinions "are entitled only to the weight they generate by the persuasiveness of their reasoning." *Hupman v. Cook*, 640 F.2d 497, 501 (4th Cir. 1981). So "[f]or the Court to adopt

---

[4] Britain Eakin, *Trump Admin To Nearly Halve Immigration Appeals Board*, Law360 (Feb. 20, 2025) (https://www.law360.com/articles/2300903/trump-admin-to-nearly-halve-immigration-appeals-board)

their reasoning, it must find that reasoning to be persuasive." *United States v. Edmonds*, 326 F. Supp. 3d 113, 122 (E.D. Va. 2018)

*Avalos* and *Sanchez-Chavez* are obviously distinguishable and lack any reasoning that applies to expedited removals; they involved *administrative* orders of removal for aggravated felons, under which the immigration officer has to decide one thing: whether the person has been convicted of an aggravated felony. *See* 8 U.S.C. § 1228(b). Those removal orders involve no relief, § 1228(b)(5), a sole ground of removability based on a purely legal question (whether the conviction is an aggravated felony), § 1228(b)(1), and are not even final, but subject to direct judicial review. 8 U.S.C. § 1228(b)(3); § 1252. They are therefore much closer to purely ministerial functions, and lack the finality of expedited removal orders under § 1225.

The only case involving an expedited removal under 8 U.S.C. § 1225 is *Millanes-Corrales*. And it is demonstrably wrong and therefore not even persuasive. It for some reason interpreted *Lucia* to require that officers of the United States exercise "nearly all the tools of federal trial judges." *Id*. at *17. And because, it held, immigration officers don't "administer oaths"[5] issue subpoenas, rule on motions, or regulate the conduct of parties, and generally don't "conduct adversarial proceedings," the magistrate concluded they were not officers of the United States. *Id*.

But that's not the standard – the Appointments Clause governs many types of officers who do not conduct adversarial court-like proceedings. Every cabinet-level position is a principal officer under the Appointments Clause, for example. The Supreme Court itself has held that many federal employees whose jobs look nothing like trial judges, and who don't conduct adversarial

---

[5] Actually, they not only *do* but *must* administer oaths. 8 C.F.R. § 235.3(b)(2).

proceedings, are inferior officers. *See, e.g.*, *Kennedy v. Braidwood Mgmt.*, 145 S.Ct. 2427 (2025) (Preventive Services Task Force members); *Weiss v. United States*, 510 U.S. 163, 170 (1994) (all commissioned military officers); *Myers v. United States*, 272 U.S. 52 (1926) (postmaster first class); *Ex Parte Hennen*, 38 U.S. 225 (1839) (district court clerk). Instead, the proper inquiry, as the Supreme Court has held, is to look to historically similar cases, *Lucia*, 585 U.S. at 246. And if there are none, examine whether the officer exercises significant authority by asking whether they occupy a continuing position established by law, whether their decisions adjudicate important rights and are final and unreviewable. ECF No. 21 at 6-8. Here, *Ekiu* provides a direct precedent, and the scope and finality of immigration officers' decisions, even if examined as *res nova*, satisfies the inferior officer test.

Respectfully Submitted,
Reynaldo Del Cid-Castillo.

By:    /s/
    Counsel
    Joseph S. Camden
    Va. Bar No. 92143
    Assistant Federal Public Defender
    Office of the Federal Public Defender
    701 E. Broad St., Ste. 3600
    Richmond, VA 23219
    (804) 565-0830
    Fax (804) 648-5033
    joseph_camden@fd.org